## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DARRELL T. BURSEY, JR.,**

    **Plaintiff,**

v.                                               Case No.  6:08-cv-744-Orl-35DAB

**JOSEPH AMEIGH, et al.,**

    **Defendants.**

_____/

## ORDER GRANTING SUMMARY JUDGMENT

This case is before the Court on Defendant's Amended Motion for Summary Judgment (Doc. No. 73).  In accordance with *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), Plaintiff was notified by Order of the Court of his right to respond to Defendant's motion for summary judgment, and he filed a response thereto (Doc. No. 75).

*I.*	*Factual Background*

**A.**	**Plaintiff's Allegations**

Plaintiff, a prisoner in the State of Florida, filed an amended complaint (Doc. No. 22) pursuant to 42 U.S.C. § 1983, alleging that he was in Melbourne, Florida walking on Kennedy Street between his cousin's house and his grandparents' house.  (Plaintiff's Amended Complaint at 8.)  Near the intersection of Kennedy Street and Masterson Street, he noticed a "white male . . . . wearing a black t-shirt that said ESPN on it."  *Id*.  This individual was walking towards the Plaintiff, and, when they got near one another, Plaintiff noticed that the individual had a gun in his hand.  *Id*.  Plaintiff "got scared" and started to

run. *Id*. at 9. As Plaintiff turned around, the individual shot him "for no reason at all." *Id*. Plaintiff states that the individual who shot him was Defendant, a police officer with the Melbourne Police Department. *Id*.

Following the shooting, Plaintiff ran into his grandparents' home, and police officers then arrived on the scene and surrounded the home. *Id*. After discussions with police, the family allowed the Chief of Police to enter the home, and Plaintiff was transported to the hospital. *Id*. He was treated and told that he would be charged with "Battery on a L.E.O. and Resisting Arrest without violence." *Id*. at 9a. Plaintiff alleges that those charges were created to justify the shooting. *Id*.

Plaintiff asserts that the following rights were violated: 1) Fourth Amendment rights as a result of an unreasonable search and seizure; 2) Eighth Amendment rights as a result of the use of excessive force; and 3) Fourteenth Amendment rights as a result of the deprivation of "equal protection by a police officer who abused his power and shot me instead of protecting me."

**B.     The Evidence Presented by Defendant**

On May 12, 2006, Defendant, along with other members of the Melbourne Police Department, were conducting surveillance in the area of Kennedy Street and Masterson Street, which was an area well known for drug dealing. (Exhibit 3, Incident Report at 1.)[1] Defendant witnessed Plaintiff "making hand-to-hand transactions with different unknown" individuals. *Id*. Plaintiff then began walking away from the area and towards where Defendant was hidden. *Id*. at 2. Defendant then emerged from his hidden surveillance

---

[1] The reference to Exhibits pertain to the exhibits attached to Defendant's amended motion for summary judgment.

position and confronted Plaintiff and shouted at him to stop; however, Plaintiff ignored his commands and kept walking towards Defendant. *Id*. Defendant was dressed in plain clothes, but his police badge was on his belt and visible. (Exhibit 11, Interview of Defendant by Special Agent Ryan Bliss at 5-6.) As Plaintiff walked towards him, Defendant ordered him to stop and identified himself as a police officer, but Plaintiff failed to do so. *Id*. at 6-7.

Defendant removed his weapon and further ordered Plaintiff to stop. *Id*. at 6. Plaintiff continued walking towards Defendant without acknowledging his commands, and eventually Plaintiff "walked directly into" Defendant, and they bumped one another "chest to chest." (Exhibit 3, Incident Report at 2.) A struggle ensued, and, during the struggle, Defendant attempted to restrain Plaintiff, and the pistol was accidentally discharged. *Id*.; Exhibit 11, Interview of Defendant by Special Agent Ryan Bliss at 6-8. When Defendant heard the gunshot, they disengaged from one another, and Plaintiff fled the scene. (Exhibit 3, Incident Report at 2.) Plaintiff ran into his grandparent's home, Exhibit 16, Plaintiff's Deposition at 48, and Defendant and other members of the Melbourne Police Department surrounded the home and spoke with Plaintiff's grandfather. *Id*. at 49-51; Exhibit 3, Incident Report at 2. Plaintiff surrendered to authorities.

Plaintiff was then taken to Holmes Regional Medical Center where he underwent medical examination and treatment for the gunshot wound. (Exhibits 17 and 18.) Medical tests revealed that the bullet entered and exited Plaintiff's left shoulder. (Exhibit 16, Plaintiff's Deposition at 25.) Shortly thereafter, Plaintiff was charged by amended information with battery upon a law enforcement officer and resisting arrest with violence.

(Exhibit 1.) Pursuant to a plea agreement, he entered a plea of *nolo contendere* to resisting arrest with violence and was adjudicated guilty of the crime and sentenced to imprisonment for a term of five years, to be served concurrently with the sentences imposed in another criminal case.[2]  (Exhibits 6 and 7.)

Plaintiff mentioned in an interview with Special Agent John "Jay" Schultz that he did not believe that Defendant "even knew he shot me." (Exhibit 10 at 11.)  Plaintiff also stated in his deposition that he did not know whether the shooting was an accident. (Exhibit 9, Deposition of Plaintiff at 66.)

Following the shooting, the Florida Department of Law Enforcement ("FDLE") conducted an investigation into the events surrounding the shooting. As part of the investigation, FDLE agents conducted interviews, collected evidence, and performed testing. (Exhibit 13.)  Subsequently, FDLE issued a report summarizing its investigation and submitted it to the State Attorney's Office. *Id*.  The local State Attorney, Norman P. Wolfinger, then issued a letter to Special Agent Bliss of FDLE declaring his office's conclusion that the discharge of the firearm by Defendant was accidental. (Exhibit 15.)

## II.     Legal Standards

### A.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if it appears that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one.

---

[2] The State agreed to dismiss the battery count.

*Celotex Corp. V. Catrett* 477 U.S. 317, 323 (1986). Rule 56(e) further provides in pertinent part as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth facts showing there is a genuine issue of fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Essentially, the nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted).

### III. Analysis

### A. Fourteenth Amendment Claim

Plaintiff contends that his Fourteenth Amendment rights were violated as a result of the deprivation of "equal protection by a police officer who abused his power and shot me instead of protecting me."

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. *See San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972). "To state a

5

claim under the Equal Protection Clause, a section 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th 1990) (citations omitted).

Plaintiff's equal protection claim is deficient. Plaintiff makes no allegation in his amended complaint, and provides no evidence, of invidious discrimination by Defendant based upon his membership in a protected class. Further, Plaintiff has not alleged membership in a class of group, and neither the amended complaint nor Plaintiff's deposition provide any factual support for his claim.[3] Plaintiff's failure to allege or provide any evidence of such basic elements is fatal to his equal protection claim. At best, Plaintiff has alleged that he was treated unfairly as an individual by Defendant, which is insufficient to state an equal protection claim. *See Eley v. Herman*, 2007 WL 1667624, at *5 (N.D. Ind. June 8, 2007) (finding that "[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual.") (citation omitted) (quotation omitted).

Moreover, Plaintiff cannot rely merely on allegations contained in his own pleadings; rather, his response must set out specific facts showing a genuine issue for trial. Defendant's motion for summary judgment on the Fourteenth Amendment claim must, therefore, be granted in light of the absence of any facts or evidence relating to discrimination.

---

[3] In fact, when Plaintiff was asked in his deposition whether he had any possible explanation for why Defendant shot at him, Plaintiff responded "I don't know. I guess something is wrong with him, I guess." (Exhibit 16, Plaintiff's Deposition at 38.) Plaintiff made no mention of being discriminated against by Defendant, and he did not state that he had been singled out because of membership in a racial or other protected class.

6

### B.     *Fourth and Eighth Amendment Claims*

#### 1.     *Overview of Plaintiff's Claims*

Plaintiff clams that his Eighth Amendment rights were violated as a result of the use of excessive force.  Plaintiff presents his excessive force claim as a violation of the Eighth Amendment.  However, the Eighth Amendment's prohibition against cruel and unusual punishment applies only to individuals who have already been convicted of a crime.  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  While Plaintiff is unable to rely on the Eighth Amendment in this context, he may present his excessive force claim as a violation of the Fourth Amendment.[4]  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that all claims of excessive force in the context of an arrest should be analyzed under the Fourth Amendment and its reasonableness standard).  Thus, the Court will consider the merits of Plaintiff's excessive force claim under the Fourth Amendment.[5]

The test for excessive force during arrest requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing  governmental  interests at stake."  *Graham,* 490 U.S. at 396 (quotation omitted) (citations omitted).  The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect posed immediate threat to the safety of the officers or others, and whether he was

---

[4]The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).

[5]The *Graham* court ruled that most excessive force cases borne out of an arrest, investigatory stop, or other seizures of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under the Fourteenth Amendment's "substantive due process" analysis. *Id*. at 395.

actively resisting arrest or attempting to evade arrest by flight. *Id*. "The `reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Moreover, "the `reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are `objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*.

*2.   Applicability of Heck v. Humphrey*

Defendant argues that Plaintiff's claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because of Plaintiff's state-court conviction for resisting arrest with violence. Under *Heck*, a section 1983 claim that would call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable, and, therefore, does not accrue until and unless the plaintiff can prove that his (or her) conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. Accordingly, when a plaintiff files a § 1983 action, the Court must consider whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487.

In the present case, Plaintiff pled guilty to, and was convicted of, resisting an officer

with violence in violation of section 843.01, Florida Statutes.[6] That charge arose out of the incident in this lawsuit. *See* Exhibit 16, Plaintiff's Deposition at 71-78.

In this lawsuit, Plaintiff specifically testified at his deposition that, during the incident in which he was shot, he never struck, grabbed, touched, or had any physical contact whatsoever with Defendant. *Id*. at 35. According to Plaintiff, he (Plaintiff) was walking down the street, and Defendant "got up on [him] pretty much out of nowhere, and as [he] turned to run [Defendant] shot [him]." *Id*. at 21. Plaintiff stated that Defendant was about three feet away from him when he realized that Defendant had a gun in his hand. *Id*. at 23. Upon seeing the gun, Plaintiff turned and ran, and, as he turned, Defendant shot him one time in his shoulder. *Id*. at 24-25. After he was shot, Plaintiff ran inside the house in front of where the shooting occurred and then ran to his grandparent's house, which was behind the first he house he entered. *Id*. at 48-49. Plaintiff also stated that Defendant "made up" the charges against Plaintiff because he shot him and that he (Plaintiff) never committed those offenses. *Id*. at 75.

Hence, Plaintiff claims to be a passive victim of Defendant' excessive force. The essence of Plaintiff's factual claim is that he was simply turning away and then attempting to run away from Defendant when Defendant shot him. Under Plaintiff's version of the facts, he never resisted or had any physical contact whatsoever with Defendant. In fact, according to Plaintiff, Defendant shot him without warning, provocation, or any cause whatsoever. He also claims that he never committed the offense of resisting arrest and that Defendant manufactured that charge to explain the alleged accidental discharge of the

---

[6] Section 843.01 provides that "[w]hoever knowingly and willfully resists, obstructs, or opposes any officer . . . by offering or doing violence to the person of such officer . . . is guilty of a felony of the third degree . . . ."

9

weapon.

This categorical denial that he resisted arrest necessarily implies that his conviction for resisting arrest with violence was unlawful and unwarranted, implicating the barrier presented by *Heck*. The claims in the instant case are inconsistent with pleading guilty to and being convicted of resisting arrest, and, Plaintiff's own claims here, and a verdict in his favor, would factually and legally "necessarily" undermine the validity of his criminal conviction. Consequently, the Court must conclude that Plaintiff's claims for excessive force use of excessive force are barred by *Heck* unless and until his convictions are set aside.[7] In this case, Plaintiff's underlying conviction stands unchallenged. Accordingly, Defendant is entitled to summary judgment on Plaintiff's excessive force claims.

## IV.  *Conclusion*

The Court finds that Defendant is entitled to summary judgment as a matter of law on Plaintiff's claims.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. No. 61) is **GRANTED.**

2. The Clerk of the Court is directed to enter a judgment in favor of Defendant

---

[7]The opinion in *Dyer v. Lee*, 488 F.3d 876 (11th Cir. 2007), is distinguishable because *Dyer* involved allegations of excessive force occurring after the plaintiff had been placed in lawful custody for resisting arrest. While the plaintiff pleaded guilty to resisting arrest under Florida law, the court let stand her excessive force claim relying on allegations of excessive force long after the lawful arrest occurred. *Dyer*, 488 F.3d at 882-84 (section 1983 claim against arresting officer for excessive force does not necessarily negate an element of the underlying charge of resisting arrest with violence where alleged acts of excessive force extend beyond unlawful conduct of the plaintiff). Here, Plaintiff alleges an unprovoked assault preceding his arrest and denies resisting arrest. In the words of *Dyer*, such proofs by "logical necessity" negate the elements of the resisting arrest charge he has previously admitted.

and against Plaintiff and is directed to **CLOSE** this case.

**DONE AND ORDERED** in Orlando, Florida, this 4th day of August 2010.

Copies to:
sa 7/27
Counsel of Record
Darrell T. Bursey

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE